## THE ASCUTNEY. THE MARIE OLSEN. CITY OF BEAUMONT SHIP CO. v. OLSEN WATER & TOWING CO., Inc.

(District Court, S. D. New York. April 10, 1920.)

1. **Collision** ⟨⟩125—Contact held shown to have caused injury.
   Injury to vessel *held* shown to have been caused by contact with it of another vessel.

2. **Collision** ⟨⟩115—Wholly disabled steamer, being brought into slip, not responsible for collision with moored vessel.
   A wholly disabled steamer, being brought into a slip by tugs, is not responsible for collision with a moored vessel.

3. **Collision** ⟨⟩115—Liability held to attach to company having in charge berthing of disabled steamer.
   Liability for collision with a moored vessel of a wholly disabled steamer being brought into a slip attaches to the company having in charge the berthing of the steamer, where no special fault can be found with the tugs being used.

In Admiralty. Libel by the City of Beaumont Ship Company against the steamship Ascutney, the steam tug Marie Olsen, and other vessels. Decree for libelant against the Olsen Water & Towing Company, Inc., claimant of the above-named steamship and tug.

Decree affirmed, 277 Fed. 243.

Kirlin, Woolsey & Hickox, of New York City, for libelant.

Francis G. Caffey, U. S. Atty., of New York City, for claimant United States.

Foley & Martin, of New York City, for claimants Newark & New York Towboat Co. and Olsen Water & Towing Co., Inc.

Patrick J. Dobson, of New York City, for claimant Kennedy Towing Line, Inc.

KNOX, District Judge. [1] There is no question but that the Ascutney, which was in charge of Olsen Water & Towing Company, Inc., was in contact with the City of Beaumont. Nor is there any doubt that some of the latter vessel's chain plates were damaged. The impleaded respondents and claimants contend that the injury to the Beaumont was done prior to the time when the Ascutney came against her. Three witnesses testify positively that they saw and commented upon the bent chain plates and broken shrouds of the Beaumont upon the morning of December 16, 1918, and before the Ascutney arrived at the slip where the Beaumont was berthed. Furthermore, the master of the Ascutney and the tugmaster of the respondent, who was docking her, testify with much definiteness that the contact of the Ascutney with the Beaumont could not possibly have resulted in injury to the latter. It seems to me that, had the attention of the witnesses on board the Ascutney been directed as sharply to the port side of the Beaumont as they claim it to have been at the moment of contact, they would have taken notice of damaged chain plates and broken shrouds, had these, as a matter of fact, existed prior to the collision. Yet there

is no evidence from any of them to the effect that any damage to the Beaumont then existed.

It is also contended that the Ascutney's sides were smooth, and that there was no projection of any character that could have pulled the plates from the Beaumont's side. It is admitted, however, that fenders, in addition to those made of rope and cork, hung over the Ascutney's sides, and I do not think it beyond the range of possibility that one of these fenders, caught between the Ascutney and the chain plates, and then being subjected to a forward movement, might have occasioned the damage. However, I do not consider it necessary to speculate as to exactly what it was about the Ascutney that caught hold of the plates, if I find that the contact of the two vessels was what gave rise to the Beaumont's injury.

Thomas Ryall, a wholly disinterested witness, not now connected with any of the parties in interest, was a watchman on board the Beaumont. He was within 15 or 20 feet of the place where the damage was done. He had been watching the Ascutney from the time she began to maneuver into the slip, he saw the towed vessel come into contact with his ship, and as she moved forward and brought about the damage he and the mate went to get the name of the vessel. He also swore that the Beaumont was in good order prior to the collision, and, had she been out of order as to her shrouds and chain plates, it is altogether reasonable that he would have known of it.

[2, 3] The circumstances tend strongly to support the libelant's position, and I shall find in its favor. It would seem that the libel as to the Ascutney, which was wholly disabled, should be dismissed. under the authority of Liverpool, Brazil & River Plate Steam Navigation Co. v. Brooklyn Eastern District Terminal, 251 U. S. 48, 40 Sup. Ct. 66, 64 L. Ed. 130. No specific fault can be found against the tugs, and the liability should, I think, attach to the Olsen Water & Towing Company, Inc., which had in charge the berthing of the Ascutney.

A decree as indicated will issue.